Good morning. Carolyn Phillips appearing on behalf of Danny Teague, the defendant and appellant in this matter. The issue that this Court had asked to be briefed was whether or not the District Court had plainly erred by imposing convictions on Counts 1 and Counts 2 in violation of double jeopardy. Count 1 was the receipt of child pornography. Count 2 was possession of child pornography. Going through the indictment, the evidence that was submitted at trial, the jury instructions and the jury verdict, there was some overlapping between the time periods between receipt and possession. The indictment indicates that there were different media used for the possession of child pornography from the receipt. The evidence that was presented established that there were images on Mr. Teague's computer hard drive and images on compact discs. And then the jury instructions themselves left out what I would think would be a critical issue, and that was whether or not the jury would be required to find separate conduct to support the possession as opposed to the receipt charge. Counsel, the thing that strikes me here is that the plain error review might be a problem for you because if this potential issue had been brought to the trial court's attention, it could have been corrected. Yes. And there certainly was evidence from which the jury could find that one dealt with the computer and the other dealt with the CDs that were found in the briefcase. So, I mean, they're not even the same physical object. So how do you overcome the plain error problem? The combination of, I think, three things. One, the jury instructions do not clearly differentiate time periods for each charge between receipt and possession. And there's no requirement that the jury find separate conduct. But what is the test? Is the test that all those things you mentioned, the instructions, the indictment, the evidence, they all have to totally eliminate the possibility of overlapping conduct? I think in this instance where you have the government relying, it seems to be in terms of the closing argument, relying on images that were found on Mr. Teague's computer to substantiate the charge of possession, I think in that instance it is more critical that the jury be instructed regarding the necessity of finding separate conduct to support the two separate charges. But that's the same question Judge Tachima has, which is there was a wealth of material and there was a wealth of media. There was material on the computer and there was material from an earlier time period, apparently, in the CD. So there are two, as you acknowledged, two forms of media. Yes, there's overlapping time period, although the CD, the possession charge, I recall, starts in an earlier time and goes up to 2005. And then his computer, as I understand it, and the limewire evidence picks up the latter part of the overlapping date range. So I'm looking for some authority that says when you put in evidence a wealth of images in different media, and as was argued by the prosecution, the government in closing, we only need one image to show receipt and one to show possession. The government, I will acknowledge, did not say, and they have to be, each one has to be a different item. But what they did say was, we didn't give you just one. We gave you a bunch, and then proceeded to talk both about the computer and about the CD. So you say, well, they relied on the computer for possession and receipt. That's true, but they also relied on the CDs. So in that totality, where is the error as far as the jury is concerned, understanding that they had before them a bunch of images, and they almost certainly didn't break them down and say, oh, we're only going to look at computer, and then we're only going to look at CDs. They probably almost certainly said, yeah, he had it on the computer, and he also had the CDs. Right, and I think what's critical is the fact that the images that were relied on by the government in obtaining a verdict for receipt were the images that were found on the computer. And the computer, I believe, was a new computer, and I think those images had been received in June of 2005. Okay, so that takes care of receipt. That's receipt. So if the jury is being instructed, not necessarily to find that they're separate contact. In other words, when you have a jury instruction that overlaps time period and doesn't designate the requirement of separate contact, and coupled with the fact that you have the government arguing at closing that we only have to show one thing, we don't have to establish But the What I was going to say is that the closing clearly had a different emphasis because the possession charge, the government was arguing about the CDs, which it said nothing about in the argument about receipt. So the entire discussion of receipt for many, many pages is some stuff that happened in November of 2005, I mean, with certain images that they stress. And then they mention the computer on the possession, but then go on to talk about the CDs as a separate thing. So what effect does that have? I think, I mean, I think to be almost overcautious in the sense that the jury is now presented with all this evidence, all the evidence that's found that supports the government's charge of receipt, all the evidence that's included with that, that supports the possession. Right. But you're the one who said, well, let's look at the final argument of the prosecutor. But to me, the final argument discusses or focuses on two extremely different things. The receipt focuses on the computer, and the possession charge, the argument focuses on the third CD. I think with the closing argument, I mean, the references in the opening brief to the excerpts of record in which the government. I'm looking at it. Right. Let's talk about what they say, just to make specific what Judge Graber has posed. I'm taking an excerpt, but I'm at E.R., I guess, is 85. Or 85. Yeah, 85. So they talk about the sheer volume, and he's talking about the briefcase and the CDs. Now, he says one image of child pornography on a CD would be enough. And then he talks about a whole range of CDs and focuses on, eventually gets down to CD3. But here's what he says. We also have to prove to you, so ladies and gentlemen, there's no question that Mr. Teague knowingly possessed the child pornography on the CDs. And then he says, well, and on the hard drive. And on the hard drive. And on the hard drive. I mean, I think. Okay, so if the jury understood, let's suppose they understood from that argument that they were persuaded that he knowingly had a group of CDs in the briefcase, which were also on the hard drive, does that mean that they had to then turn to other media to find that there was possession and receipt? I think the way it's broken down in Shales is that the receipt of those images, in order to find Mr. Teague also guilty of possession, that those images cannot be the same. Yes. Unless the. . . Shales, as I recall, was a single. That's all they had was one. And they said, you've only charged and put in one image. In this case, we've got multiple. And that's what I'm trying to understand, whether Shales says, if you extend Shales, you say, well, if you tell the jury you've got a briefcase full of CDs that replicate what's on the hard drive, have you in effect reduced the universe down to a single medium, even though there are two media, and therefore you now have to, having in your argument lumped the CDs together, all those images together with the parallel images on the hard drive, now you have to tell them, and by the way, if you look at these and decide that they solved the receipt problem, then you have to find that there were some other media, just one other image that falls outside this universe I've now argued to you. Now, of course, the government could have straightened all this out by having a proper instruction and argument, but they didn't. And a proper indictment. Right. I think you're right. I mean, I think Shales definitely says as long as the government can show, even if the images are the same, but if they've been transferred to separate media and they establish that the images that underlie the possession charge are on separate media, then I agree with the Court. What the argument here is that there was muddling of the requirements in terms of what the prosecution had to establish. In the closing argument, the failure of the verdict and the instructions to establish that this must be separate conduct. Because if you look at the ---- I don't know what's so important about the closing argument, because no matter what the prosecutor says, it doesn't eliminate the possibility that it was based on the same conduct because there's overlapping evidence. In other words, no matter what any lawyer says, the jury had the right and the possibility to base their verdict on both counts on the same evidence. Right. There's nothing that required the jury to do otherwise. They can point to the arguments as, well, you know, prosecutor said you should look at this and this, but that doesn't bind the jury, and to me that doesn't eliminate the error. Right. I think my time is up, and that's the criticism. Well, I do have one more question, though, because one of the requirements of plain error is that substantial rights are affected. And where you have not only many, many images, but two completely separate media involved, had this been done exactly correctly, it seems to me the result would have been exactly the same. So it's hard for me to see the effect on substantial rights. And I think to me, I guess that's where the government's argument, closing argument is important, because when the government's closing argument gets to the element of interstate, the interstate argument on the possession is purely about where those compact disks are manufactured. So it seems to me pretty clear that the jury didn't have to, but it likely did find one related to the computer images and one related to the compact disks. So talk to me about substantial. How it would have made a difference and why this is substantial. Well, obviously, both the receipt and the possession have to be interstate. And we have the Internet and we have the CDs. And I believe that the case law establishes that even when, which is common, when someone is convicted of both receipt and possession and maybe another charge as here in production, that those sentences generally run concurrently, even though that is true. Even if the district court, if this case would be remanded in the district court order to exercise its discretion and determine which of the two charges, receipt or possession, it should dismiss, that the 230 months to which Mr. Teague was sentenced would still remain. Well, my question isn't really about the sentence. My question is about why this mistake has had an effect to begin with on the convictions,  The result would have been exactly the same, three counts of conviction. That's what I'm getting at. Not just, oh, we'd send it back and would the sentence be the same. Well, in the citations in my brief, there is the case law indicates that even in this circumstances, the fact that there is a violation of the double jeopardy and the government Maybe.  Well, that's true. See, that's what we don't know. There's no reason to. I guess I have difficulty seeing why that is even likely in this instance. Well, even if it were likely, let's say that the jury did rely only on the images that were recovered from Mr. Teague's computer and he is then convicted of possession based on those images, that would be a violation of double jeopardy. And because it is a substantial right, it would make the conviction unconstitutional. And because of this constitutional right, it's so critically important to ensure that defendants are actually charged and the evidence is produced to substantiate each of the charges for which that defendant is convicted. Thank you. Thank you. Good morning, Your Honors. Brian Enos on behalf of the United States. At the outset, I'd like to address Judge Tashima's questions because that's where I think I'll need to do some explaining for that component of the panel. With respect to the evidence, and I'll get to it. Well, let me start with the legal issue. You asked if the standard was there can't be any overlap whatsoever and do we need to prove that there's no overlap whatsoever with respect to the media used. And the answer to that is no. And it's addressed in Davenport, which I know Judge Graber is particularly familiar with, as well as Shales and Overton, where they say what you need to do is find an additional fact in the record to show that each conviction was based on separate conduct. And the Shales citation is page 977, Overton is page 696, and Davenport is page 943. I don't think there's any dispute here that we've got lots of evidence with respect to what was specifically tethered to the possession conviction. In fact, I can't. Oh, no. The question is, you know, because there's overlap in the evidence, in the indictment, right, in the closing argument. In other words, the evidence on both counts, they overlap. So how do you know that the jury, you know, focused on the overlap and, well, it's easy, you know. That covers both counts. We'll convict them of both. Sure. Isn't that the question before us? Well, that's the question. And if it is error, then is it plain? Right. With respect to the overlap, I calculate approximately 600 lines of trial testimony being dedicated specifically to the CDs and being tethered to the possession charge. And just so I'm clear with respect to my references, that's pages 278 through 295, and what I'm doing is relying on the supplemental excerpts, which is the actual trial pages themselves, just to keep the record clear. Within those 17 pages, forensic expert Kurt Blackwelder went through all seven CDs. One CD alone had 290 images. He talked about all the dates where all these child pornography was put onto these disks, which significantly, in my view, makes the case stronger than Overton, were put on before any of the child pornography was ever put on the computer found in the same garage. I know. And you could have chopped the indictment off right there. It went on to the overlapping area. Well, the indictment actually does specify CDs only in count 2. That's in pages 102 through 108 of the record. And only count 2 specifies compact disks. So whenever you get a CD, you can't put it on the computer. I'm sorry. What did you say about the indictment? True thing. With respect to the reference to count 2 in the indictment, possession, and that's in pages 102 through 108, not of the supplementals, but of the excerpts. I'm looking at the indictment.  Page 103 at the bottom begins to talk about the digital videos and or compact disks. And that's unique to count 2, Your Honor. Well, but it also says on an internal computer hard drive and on one or more digital videos. So it overlaps the computer, doesn't it, with the count 1? There is overlap, but what I would like to present is a mathematical presentation, if I will. With respect to the 24 pages dedicated to the CDs and tethered to the possession charge, the prior 17 pages I discussed, 78 through 295, plus the 6 or 7 pages in closing, 683 through 688, all is dedicated to the CDs and how they relate to the possession charge. The one line in closing. It's almost like an argument that the evidence is barely sufficient on the possession. No. It's overwhelming on the possession. We don't just have one image. All we need is one image. What we have here is. That's the problem. We only need one. And it could be the overlapping one. That's exactly the problem. Well, what we have here is in closing what was said was not only do we have the computer, because if you have receipt, as the majority in Davenport said, if you've got receipt, you've got possession as a lesser included. So, frankly, the computer is relevant to both possession and receipt. But what trial counsel said very clearly, and it's on page 683, lines 16 through 19, but we have also shown you that he had child pornography on his CDs. And then she very clearly from that point forward only talks about the possession count and all of the evidence that was supported the possession conviction. How does the plain error doctrine fit into all this? Because there has to be an error that is plain. And so as I take part of your argument to be, well, it isn't plain because it seemed like there were two separate things being talked about. The computer hard drive for one count, the CDs for another. Therefore, the error wasn't plain. Is that what you're arguing? I'm actually arguing stronger than that. I still don't see where the error is. There is always a possibility that with respect to the computer, the jury can say, you know what, we know he had this stuff. This happened to be a peer-to-peer file sharing case. But we're not convinced with respect to how he obtained possession of, which is a statutory definition of receipt. So we still got possession with respect to the computer and the CDs. There's always that possibility that that's what the jury is going to argue during their deliberations. I feel like trial counsel was very thorough in this case and said, she's actually right. When you've proven receipt, you have also proven possession. So there's no error here. What she's also said was, which was unique to the second superseding indictment, there's also CDs here. And we've got a lot of CD evidence and we've provided a lot of CD evidence. And now I'm going to tie the CD evidence to just the possession charge. Kennedy, but how does that rule out the possibility that they just said, okay, we know he got this one image on the computer and that's good enough for both receipt and possession? That's all they did. Yeah. As far as entirely ruling out the possibility, I'm not sure it does. Okay. So here's what, at least for me, is I'd like to ground our discussion in what our case law says. And I'm reading from Shales at 980. You cited 977, but I want to read 980 because it's essentially dictum. If the government wishes to charge a defendant with both receipt and possession and so on, it must distinctly set forth each medium forming the basis of the separate counts. For example, we note that there would have been no double jeopardy violation if the government had distinctly charged Shales with both receipt of material involving the sexual exploitation of minors for the images that he downloaded from the government. However, the indictment as written does not allow us to conclude that the jury found Shales guilty of separate conduct. Instead, the indictment charges Shales with receipt of the material by way of   his computer and possession of this material in the same medium. This is multiplicitous. Right. And I actually have Shales' indictment with me, if the Court would like to see it. It's on PACER. What Shales did, which ---- But then it goes on to say, the district court's jury instructions and verdict do not lead us to a different conclusion. The jury was not instructed that it would have to find separate conduct, which is the flaw here, correct? No. It's actually not. What Shales, Overton, and Davenport have all done is said, what we do is we look at the record, the entire record before us, and look for an additional fact. Was the jury instructed in this case clearly instructed to find separate conduct? None of the cases have required that. Well, that's what this implies. What Shales did, if I may just ---- Okay. First of all, here's ---- let me read the paragraph, okay, the items that they tick off. Jury was not instructed it would have to find separate conduct. District court did not utilize a special verdict form for the jury. And the government argued to the jury it could convict Shales on all three counts by relying on ---- solely on one image. Those are the three flaws that are commented upon by our colleagues. Right. So how does this case differ? Thanks for asking. I feel like the Shales court really tried to find separate conduct. And a fair reading of Shales is that they took two steps. First step is let's look at the record. The Shales indictment even says, you know, receipts based on use of a computer, possessions based on ---- derived from Internet. So there's nothing distinguishing on the indictment. The closing argument in Shales was, hey, by the way, single image, you've got both convictions, nothing in the entire trial record to distinguish the two charges. What we have here, conversely, is learning from Shales. So Shales tried. The Shales court tried to find some kind of distinction, as they say, in singular terms, and additional fact, which would justify the separate conduct, which gets us out of these Fifth Amendment concerns. This case, not only do you have copious evidence of possession-specific material supporting the conviction, but you also have an indictment that learned from Shales. Only count two refers to the CDs. You also have jury instructions that learn from Shales. Now, I'm somewhat trepidant in bringing it up because I didn't find it until yesterday, but nevertheless, it's not in the record. It is in Pacer. Jury instruction number two summarizes the charges. It's not in the excerpts. But what it says is ---- well, I'll paraphrase. It limits the receipt charge just to the computer. It makes no such limitation with respect to possession. It just says he possessed. Yes, that the possession count overlaps with count one because they both have in common the computer. There is a tiny overlap with respect to the computer. There were three lines of commentary made with respect to the overlap at closing. That's true. It doesn't hold ---- I'm talking about the indictment. The indictment does have overlap, but we do have possession with respect to the computer. You can't sentence him twice with respect to what was on his computer. That's not based on separate conduct. I'm not arguing otherwise. You can sentence him with respect to both the receipt and the possession convictions because the CDs, as they're specified in the indictment and as they're unique to count two in the indictment, is listed in count two. So everything would have been fine under anybody's theory had count two ---- I'm looking at the second jury instruction ---- had count two gone from 2001 to 2004 because the receipt went from 2004 to 2005, and it's only because count two includes the same time period that there's a problem. Everything Your Honor says makes sense. I'm still not arguing that there's even a problem because with respect to the computer  Well, a potential problem. I mean, there wouldn't even be a potential problem. It makes my job today more difficult. Right. That's true. But nevertheless, when you've got a lesser included and you actually have the evidence to convict on receipt, you are going to have possession there, and then you're going to have to go that extra step to show how you obtain possession of. In this case, it was him typing in search terms indicative of child pornography, making him publicly available on his peer-to-peer shared file folder, getting caught through an undercover investigation, and then boom, you've got receipt. And there's lots of evidence in the record with respect to how Agent Blackwelder and other agents, frankly, locked down receipt. If we didn't get to receipt, we would still have to rely on possession. That's not the only thing upon which we can rely on possession. We've also got the CDs as well. And like I said, 600 lines of either evidence or argument, I should say evidence and argument, dedicated solely to the CDs and possession. Neither Davenport nor Shales nor Overton overlooked or ignored a single distinctive fact. None of those cases did. And there's no precedent out there that requires or even asks this Court to do the same thing. Okay. I just need one technical clarification, then. Sure. My understanding was that the evidence in the record with regard to the file sharing was that the LimeWire was connected to his computer, related to his computer from a period, as I said earlier, in the latter part of the date range. He did not ñ there's no evidence that he had that computer program available in the 2001 or whatever time period, is there? That's correct. The computer, the initial, the absolute oldest evidence of child pornography ever to touch the computer relevant to this case was 2004. That's what I thought. So you said, with the commonality overlap in the indictment, that somehow the possession of the CDs somehow had to be related to the receipt. I misspoke if I said that. My whole argument is there's absolutely no relation. That's why this case is stronger than Overton. All right. Because the CD possession occurs back before 2004. Correct. Done and dusted. Before he even buys the computer or obtains it or whatever it is. That's correct. Okay. I thank the Court for its time and welcome any additional questions. Thank you. Ms. Phillips, we more than used your time, but you may have a minute for rebuttal if you'd like, since we used a lot of it with questions. The Court has questions for me. Well, I'd like to give you a chance to comment on my quote from Shales. I mean, how do you distinguish? Shales seems to suggest that it's limited to a narrow set of circumstances and that circumstances don't quite exist here because it wasn't boiled down to a single image. I agree with the Court. I think that Shales' circumstances are different. However, I think what the Court recognizes is, in Mr. Teague's situation, is that we have an overlap of time period. We have the referencing to the computer images that are downloaded to the computer as being enough to find possession. And we have the fact that the verdict, neither the verdict form nor the jury instructions themselves clarify what it is that the jury has to find in terms of is it just the images or is it the computer images that are being used to find possession with the images on the computer. And I agree. I think what Shales says lays the groundwork and establishes that the jury must be instructed and informed that this is separate conduct. In order to find that Mr. Teague violated the possession clause of childpouring, we have to have separate conduct. Not that there isn't evidence. There is evidence. But it also what I could never figure out is why the, and I don't have to, I guess, but why the verdict form didn't limit or even the indictment didn't limit the possession to the time period in which the CDs were actually created and possessed. Are there any other questions? Thank you very much. Thank you very much. And we appreciate the arguments of both counsel. They've been very helpful and the case is submitted.
judges: Tashima, Graber, Fisher